CARLTON *v.* MOULTRIE BANKING COMPANY.

No. 7284.   February 22, 1930.

*Clifford E. Hay,* for plaintiff in error. *W. G. Martin,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) One of the grounds of the motion for new trial in this case assigns error because the court directed the verdict. The determination of this issue depends primarily upon two questions: first, whether the note sued upon by the plaintiff and the deed executed by the defendant to secure the payment of that note constitutes an entire contract; and second, whether the relation of Kline as attorney for the bank was such that his knowledge may be imputed to the bank and that the bank is bound by his conduct in obtaining the note and security deed involved in this case. If the contract ought to be enforced in this case, or if the knowledge of Kline may be imputed to the bank, and if he was an agent of the bank, although he may also have to some extent been the agent of both parties, thus fulfilling a dual agency, the evidence would have supported, if it did not demand, a verdict different from that directed by the court. It is clear that the lower court entertained the opinion that the contract was severable, and the plaintiff in the lower court was of the same opinion, because the plaintiff conceded in the trial that the plaintiff was not entitled to recover the sum of $2248.73 as representing that portion deducted from the proceeds of Mrs. Carlton's note by the bank from the loan at the time the loan was made, because it plainly appeared that that amount of the money borrowed upon her note was accepted by the bank in payment of a fi. fa. rendered against her husband as one of the defendants and in which Mrs. Carlton was in no way concerned. It may be noted that even if the court was correctly of the opinion that Mrs. Carlton was liable for all of the $7000 loan originally evidenced by her note, except the $2248.73 for which she was not liable because it was knowingly withheld by the bank in payment of a debt of her husband, the verdict directed is still erroneous in that the amount of principal and interest which the jury was directed to find, and consequently the attorney's fees, was too large and placed upon the defendant the burden of paying more than she was legally subject to pay under the theory adopted by the court. If the amount originally borrowed by Mrs. Carlton was $7000 and was rightfully subject to a deduction of $2248.73, then in equity this $2248.73 should have been deducted as of the date on which Mrs. Carlton borrowed the same, with the result that the principal at

the end of the first year, when the note seems to have been renewed, instead of being $7000 would have been only $4751.27, and the renewal note, instead of being $7561.40 as appears from the record, should have been only $4751.25, and the interest for one year upon that sum, instead of being $561.40, would be $380.10; or, in other words, the note should have been only $5023.37; so that even with the reduction of the principal made Mrs. Carlton was entitled to a deduction of $181.30 for interest included in the note for $7561.40 for interest illegally collected. Also the renewal note was made December 30, 1923, and included the $2248.73 which should have been deducted if the court was correct in the verdict directed when the amount of Mrs. Carlton's indebtedness at the time was only $4751.27 principal. Consequently the verdict directed to be rendered by the jury was $374.10 in excess of what it should have been upon that ground, and $181.30 by reason of the inclusion of the interest in the renewal, making a total of $555.40 excess which should not have been returned by the jury, followed as a consequence by the fact that the attorney's fees of ten per cent. excess of $555.40 and amounting to $55.54, rendered the finding of $712.68 attorney's fees incorrect and the true amount should have been only $657.14. Thus it is shown that, even if the contract in this case is severable, the verdict directed by the court lacks more than $600 of being correct.

But we are of the opinion that the court should have held the note and deed with which this case is concerned an entire contract. As a witness for the plaintiff the cashier of the bank testified: "There was only one loan made, and that is the one we are suing on. In so far as the transaction of December 30, 1922, is concerned, there was only one loan and only one note representing that loan, and only one security deed taken to secure that one note." The defense set up in the cross-action being that of a wife that the debt sued on was that of her husband, and not her own, was based on sections 3007 and 2993 of the Civil Code of 1910; and the contract, being entire and not severable and entirely void in part, was void in toto. Section 4228 of that Code declares: "A contract may be either entire or severable. In the former, the whole contract stands or falls together. In the latter, the failure of a distinct part does not void the remainder. The character of the contract in such case is determined by the intention of the parties." It is clear from the

evidence in this case that it was the intention of the parties to lend $7000, to secure the $7000 as an entity, and to recover at its maturity, as the suit in this case itself shows, the entire sum with interest and attorney's fees upon the debt secured as an entity. In the language of the Code, the whole contract stands or falls together. As said by Mr. Justice Little in *Broxton* v. *Nelson*, 103 *Ga.* 327, 330 (30 S. E. 38, 68 Am. St. R. 97), quoting from Story on Contracts (5th ed.), § 26: "'An entire contract is a contract the consideration of which is entire on both sides. The entire fulfillment of the promise by either, in the absence of any agreement to the contrary, or waiver, is a condition precedent to the fulfillment of any part of the promise by the other. Whenever, therefore, there is a contract to pay a gross sum for a certain and definite consideration, the contract is entire, and is not apportionable either at law or in equity.' In determining whether a contract is entire or severable, the criterion is to be found in the question whether the whole quantity, service or thing—all as a whole—is of the essence of the contract. If it appear that the contract was to take the whole or none, then the contract would be entire. Clark, Con. 657. . . The consideration to be paid was single and entire, and therefore the contract must be held to be entire, although the subject of the contract consisted of several distinct and wholly independent items. *Branch* v. *Palmer*, 65 *Ga.* 210; Miner *v.* Bradley, 22 Pick. (Mass.) 457."

In *Bond* v. *Sullivan*, 133 *Ga.* 160 (2) (65 S. E. 376, 134 Am. St. R. 199), this court held: "If a part of the consideration of the deed in question in this case was the lifting of certain encumbrances upon the property, it was a valid charge thereon; and if the remainder of the consideration was to be appropriated to the extinguishment of the debt of the grantor's husband, the deed itself, being one entire transaction, can not be upheld, because of the impossibility of separating that which is legal from that which is illegal." In the decision of that case by Mr. Justice Beck, in so far as pertinent to the issue now before us, it was said: "But if . . the real object of the conveyance was to appropriate the value of the property conveyed, in excess of the amount represented in the encumbrances discharged, to the extinguishment of the debt of the husband actually existing at the time of the conveyance or in contemplation at that time, while a part of the consideration would

be valid, the other would be illegal, and the deed, being one entire transaction, 'can not be upheld, because of the impossibility of separating that which is legal from that which is illegal. It is not the case of a mortgage given to secure several debts, some of which are legal and some illegal, and in which that which is legal may be cut off from that which is illegal; but it is a case in which the whole transaction is so infected with the virus of illegality that there is no possibility of upholding the deed executed in pursuance of it as a conveyance of title.' *Mickleberry* v. *O'Neal,* 98 *Ga.* 43 (25 S. E. 935)." "A sale by the wife of her separate estate, made to a creditor of her husband in extinguishment of her husband's debt in part and in settlement of the wife's debt in part, the contract being entire and not divisible, is void. *Cross* v. *Cordell,* 149 *Ga.* 383 (100 S. E. 365)." *James* v. *Greene,* 152 *Ga.* 814 (2) (111 S. E. 187). In *Jackson* v. *Reeves,* 156 *Ga.* 802 (120 S. E. 541), in ruling on the case (the nature of which appears from the statements of the headnotes hereinafter quoted) Mr. Justice Hines, delivering the opinion of the court, held: "A deed and bill of sale by a wife, made to pay or secure her husband's debt, is absolutely void. *Gross* v. *Whitely,* 128 *Ga.* 79 (57 S. E. 94) ; *Pierce* v. *Middle Georgia Land Co.,* 131 *Ga.* 99, 101 (61 S. E. 1114) ; Civil Code (1910), § 3007 ; *Gilmore* v. *Hunt,* 137 *Ga.* 272 (73 S. E. 364). Where a wife executes her notes to a creditor of her husband, to pay the husband's debt to such creditor, and makes the creditor a deed to her realty and a bill of sale to her personalty to secure them, such transaction is void; and the wife can proceed by her petition in equity to cancel such deed and bill of sale as clouds upon her title, and to cancel the notes so given in payment of her husband's debt. *Gilmore* v. *Hunt,* supra; *Rountree* v. *Renfroe,* 139 *Ga.* 290 (77 S. E. 23). A wife has the right to repudiate a colorable scheme or device by which she was induced by the creditor and her husband to assume the previous debt of her husband to such creditor without any consideration flowing to her, no matter how the true inwardness of such illegal and void transaction had been concealed. *Bank of Eufaula* v. *Johnson,* 146 *Ga.* 791 (92 S. E. 631) ; *Simmons* v. *International Harvester Co.,* 22 *Ga. App.* 358 (4) (96 S. E. 9). . . Any rights, legal or equitable, of the defendant as her husband's creditor to subject to the payment of the husband's debt to him the automobile given by the

husband to the wife, and afterwards conveyed by her to the creditor, will not render her bill of sale good, if made to pay her husband's debt. The bill of sale, being one transaction, can not be upheld on the ground that it conveyed to the creditor this automobile, which was subject to the payment of the husband's debt."

We therefore hold that the contract in this case is entire, and that the deed is avoided by reason of the undisputed fact that over $2200 of the $7000 evidenced by the note was a payment by the wife of her husband's debt. But it is insisted by counsel for the defendant in error that the bank had no knowledge of the acts of its attorney, and that the attorney was in no sense an officer or agent of the bank and was not authorized as attorney to bind the bank in any way, being merely an attorney for the purpose of collecting the fi. fa. which the bank held against the defendant's husband and his codefendants. An examination of the evidence discloses the following facts: The fi. fa. for $2248.73 was totally worthless, and was the result of a suit brought by the Moultrie Banking Company through its attorney, Alfred R. Kline, against John A. Carlton (the insolvent husband of the defendant), Foote Trunk and Bag Company, J. J. Foote, and Southland Investment Company. Kline was trying to collect the fi. fa. from Carlton, and entered a scheme of subjecting the defendant's separate estate to the satisfaction of the fi. fa., as well as to stand as security for an additional loan by the bank to her husband. The deed was drawn by Kline. Both Kline and her husband were at that time pronounced "dope fiends," and preyed upon the wife's fears so as to force her to sign the note and deed sued on in this case against her will. She testified that she had never personally received or used any part of the consideration of the alleged note or deed. It was admitted, by failure to answer the sixth paragraph of the defendant's cross-action, that "Alfred R. Kline was present at the time the defendant signed the one deed which she did sign as aforesaid. He was present in his capacity as attorney at law for the Moultrie Banking Company." From these facts and others appearing in the record we are satisfied that it should have been left to the jury to say what were the powers with which Alfred R. Kline, the bank's admitted attorney, was clothed; because in our opinion the evidence is sufficient to authorize a jury to find that he was a special agent of the bank acting with its knowledge with full power, if he chose, to do each and every

one of the things which there is evidence to show were done by him. In our opinion this is an additional reason why the court erred in directing the verdict. Whether Kline was or was not the agent of the bank empowered by the bank to act as the evidence shows he did act·is, after all, a question of fact, and the existence or non-existence of this fact is a question which a jury alone can decide.

But it is insisted by the learned counsel for defendant in error that the plaintiff's reply to the defendant's cross-action is to be taken as an answer to an equitable petition expressly praying discovery, which can be overcome only by two witnesses, although no discovery is prayed in the defendant's cross-action. Though this may have been formerly the rule, it has not been the law of this State since 1898 when the General Assembly passed the act which is now embodied in section 4547 of the Code of 1910. As held by this court in *Arnold* v. *Johnson,* 150 *Ga.* 604 (104 S. E. 499), "'It is only where discovery is expressly prayed for in plaintiff's petition that two witnesses, or one witness and corroborating circumstances, are required to rebut the answer of defendant as to facts within his own knowledge, responsive to the discovery sought.' *Toomer* v. *Warren,* 123 *Ga.* 477 (51 S. E. 393)." Discovery not having been expressly prayed for in the answer or cross-action of the defendant in this case, when the court upon the defendant's petition required the plaintiff to make answer to the allegations of the defendant in her cross-action without expressly praying for discovery, the rule with reference to discovery just referred to has no application. The defendant's motion, provided for by the terms of section 5633 of the Code of 1910, has no reference to the equitable doctrine of discovery, but is applicable alike to actions at law and suits in equity. That section is as follows: "Pleas and answers may be demurred to; and if new matter is set up by the defendant not controverting the plaintiff's petition, the plaintiff, in proper cases, may be required to meet the same by appropriate written pleadings." Acts 1887, p. 65.

Aside from the assignments of error that the court erred in directing the verdict, the remaining assignments of error refer to rulings of the court as to the admissibility of certain testimony offered in behalf of the defendant and repelled by the court, as appears from the foregoing statement of facts. We are of the opinion that the court erred in excluding the testimony to the rejection of

which complaint is made. The questions and answers taken from the depositions are admissible, because relevant for the purpose of submitting to the jury the entire facts pertinent to their determination of the question as to the relation between these parties, and in support of the defendant's contention of a scheme and device entered into between her husband and the agent of the bank to procure the defendant's property for the purpose of subjecting it for both purposes, and the testimony should have been admitted for that purpose.

*Judgment reversed. All the Justices concur, except Atkinson and Gilbert, JJ., who dissent.*

GILBERT, J. I dissent from the judgment of reversal based on the complaint of the direction of the verdict. The officers of the bank, president and cashier, both testified that attorney Kline did not represent the bank in making the loan to Mrs. Carlton, and had no authority to so represent the bank. They admitted that Kline and his law firm did often represent the bank in making collections, including the claim against John A. Carlton. Also, they admitted that Kline was the only attorney the bank dealt with in making the loan to Mrs. Carlton. Neither of these admissions authorize a finding that Kline was representing the bank in this transaction. This evidence, construed in the light of and in connection with the positive and uncontradicted evidence that Kline had no authority to represent the bank and did not do so, demanded a finding that Kline did not represent the bank. Since the only contention of notice to the bank of the defenses set up is based on the theory of Kline's agency for the bank, it follows that the court properly directed a finding against the defendant. It is true that the brief of evidence contains a statement by John A. Carlton, witness for Mrs. Carlton, that Kline told him at the time the loan was negotiated that he represented the Moultrie Banking Company; but the rejection of this very evidence is made a ground of the motion for a new trial, and the evidence is obviously inadmissible. It should be given no probative value in these circumstances. I concur in the several general principles of law stated in the first three headnotes, but can not concur that they are properly applicable to the facts of the case, nor can I concur in some of the comments on the effect of the evidence. I dissent from the rulings in the fourth headnote dealing with the admissibility of evidence. In

substance each of the grounds is based on a refusal of the court to permit proof of agency by declarations of the alleged agent. Nothing is better settled than the negation of the proposition. No error is shown in these grounds. Mr. Justice Atkinson concurs in this dissent.